**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRANDON DELANEY,** | : | |
| **on behalf of himself and those similarly** | : | |
| **situated,** | : | **No. 4:16-cv-662** |
| **Plaintiffs** | : | |
| | : | **(Judge Kane)** |
| **v.** | : | |
| | : | |
| **FTS INTERNATIONAL SERVICES,** | : | |
| **LLC, et al.,** | : | |
| **Defendants** | | |

**MEMORANDUM**

Before the Court in the above-captioned action is Defendant FTS International Services,

LLC's ("FTS"), Motion to Dismiss or Strike Collective Action Allegations or Alternatively

Motion for Partial Summary Judgment.  (Doc. No. 12.)  For the reasons that follow, Defendant's

motion will be granted.

## I.    FACTUAL[1] AND PROCEDURAL BACKGROUND

Plaintiff Brandon Delaney's First Amended Complaint is premised on allegations that

Defendants FTS and J-W Wireline Company ("J-W Wireline"), and John Does 1-10 failed to pay

him and similarly situated individuals proper overtime compensation in violation of the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. § 209 et seq., the Pennsylvania Minimum Wage Act

("PMWA"), 43 P.A. § 333.101 et seq., and the Pennsylvania Wage Payment and Collection Law

("PWPCL"), 43 P.S. § 260.1, (collectively, "Pennsylvania wage laws").  (Doc. No. 7 ¶ 1.)

On or about June 13, 2014, Defendant J-W Wireline hired Plaintiff as a Service

---

[1] The following background is taken from the allegations of Plaintiff's First Amended
Individual, Collective, and Class Action Complaint ("First Amended Complaint"). (Doc. No. 7.)

1

Supervisor.  (Id. ¶ 29.)  In or around December 2014, Defendant FTS bought J.W. Wireline's business, and afterwards, Plaintiff continued working in the same position for FTS.  (Id. ¶¶ 30-31.)  Plaintiff asserts that, prior to January 24, 2016, he earned a salary of $96,000 per year plus a weekly, non-discretionary "Wireline Bonus," and regularly worked at least 60 hours per week.  (Id. ¶¶ 34-35.)  Plaintiff alleges that his primary duties consisted of performing manual labor tasks, not office or non-manual work directly related to management or general business operations.  (Id. ¶¶ 37-38.)  He further maintains that he did not have the authority to hire or fire other employees, nor did he exercise discretion or independent judgment over matters of significance on behalf of Defendants.  (Id. ¶¶ 36-37.)  Plaintiff alleges that, at all relevant times, he was a non-exempt employee entitled to overtime compensation, and that prior to January 24, 2016, Defendants did not pay him additional compensation for hours worked beyond 40 hours in a workweek.  (Id. ¶¶ 39-40.)  Further, Plaintiff asserts that Defendants failed to implement a system to track the number of hours worked each week by Plaintiff and others similarly situated.  (Id. ¶ 41.)

Plaintiff alleges that, after January 24, 2016, Defendants classified Plaintiff as a non-exempt employee entitled to overtime wages.  (Id. ¶ 52.)  Plaintiff maintains that, after January 24, 2016, Defendants began paying Plaintiff an hourly rate of $26.50 per hour plus the weekly, nondiscretionary Wireline Bonus;  however, Defendants paid Plaintiff an overtime premium of $13.25, which is one-half times his hourly rate of $26.50.  (Id. ¶¶ 53-54.)  Plaintiff alleges that Defendants failed to use a "weighted average," by applying the Wireline Bonuses earned by Plaintiff when determining his regular rate, upon which his overtime rate was based, resulting in a failure to pay Plaintiff a least one and one-half times his regular rate for all hours worked in

excess of forty hours in a workweek.  (Id. ¶¶ 55-56.)

Plaintiff seeks to pursue this action collectively under the FLSA on behalf of himself and all others presently and formerly employed as hourly employees who work or worked for Defendants in positions entitled "Service Supervisor," "Pipe Recovery," "TCP Specialist," and in like non-exempt positions with similar duties for the three years prior to the filing of suit. (Id. ¶ 13.)  Plaintiff alleges that there are numerous similarly situated current and former employees of Defendants who were compensated improperly for overtime work in violation of the FLSA. (Id. ¶ 15.)  Plaintiff proposes that there exist two subclasses of collective plaintiffs: (1) misclassified collective plaintiffs, which includes individuals employed as Service Supervisors prior to January 24, 2016, who Plaintiff alleges were misclassified as exempt from the overtime requirements of the FLSA and were subject to Defendants' failure to pay overtime wages (Id. ¶ 16(a)); and (2) bonus collective plaintiffs, which includes individuals employed in positions titled Service Supervisor, Pipe Recovery, and TCP Specialist, who Plaintiff alleges are similarly situated because they were all subject to Defendants' failure to pay proper overtime wages of at least one and one half times the regular rate due to Defendants' failure to include Wireline Bonuses in their calculation of the regular rate (Id. ¶ 16(b)).  Plaintiff further seeks to pursue a class action for violations of the Pennsylvania wage laws on behalf of similarly situated plaintiffs pursuant to Federal Rule of Civil Procedure 23.  (Id. ¶¶ 19-27.)

Plaintiff filed his initial Individual, Collective, and Class Action Complaint in this matter on April 20, 2016.  (Doc. No. 1.)  On the same date that Defendant FTS filed its Motion to Dismiss or Strike Collective Action Allegations or Alternatively Motion for Partial Summary Judgment with respect to the collective-action claims in the complaint (Doc. No. 8), Plaintiff

filed his First Amended Individual, Collective, and Class Action Complaint (Doc. No. 7).[2]

Defendant FTS also filed an Answer to the original complaint on that same date.

On June 20, 2016, Defendant FTS again filed its Motion to Dismiss or Strike Collective

Action Allegations or Alternatively Motion for Partial Summary Judgment with respect to

Plaintiff's collective action claims (Doc. No. 12), and a brief in support thereto (Doc. No. 13).

Defendant FTS also filed an Answer to the First Amended Complaint on the same date.  (Doc.

No. 14.) After Defendants FTS's motion was fully briefed, the Court held a case management

conference in this matter on September 14, 2016. After the conference, the Court issued an Order

staying discovery as to Plaintiff's collective-action claims pending the Court's disposition of

Defendant FTS's pending motion, but directing that discovery proceed on Plaintiff's individual

claims.  (Doc. No. 33.)  Defendant J-W Wireline answered the First Amended Complaint on

September 20, 2016.  (Doc. No. 35.)  Defendant FTS's motion has been fully briefed and is ripe

for disposition.

## II.    LEGAL STANDARD

### A.    <u>Motion to Dismiss</u>

A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a

complaint's factual allegations.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  A complaint must

contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in

order to "give the defendant fair notice of what the ... claim is and the grounds upon which it

rests." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal quotation marks omitted)

---

[2] Given that Plaintiff has filed an amended complaint, Defendants FTS's motion to dismiss the original complaint (Doc. No. 8) will be denied as moot.

(interpreting Fed. R. Civ. P. 8(a)).  Generally, a court considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) must determine whether the complaint contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678.

Consistent with the Supreme Court's rulings in Twombly and Iqbal, the United States Court of Appeals for the Third Circuit requires district courts to engage in a two-part analysis when reviewing a Rule 12(b)(6) motion: (1) first, a court should separate the factual and legal elements of a claim, accepting well-pleaded factual matter and disregarding legal conclusions; (2) second, a court should determine whether the remaining well-pled facts sufficiently demonstrate that a plaintiff has a "plausible claim for relief."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679).  Facial plausibility exists when the plaintiff pleads factual content "that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (internal citations omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557.)

In conducting its analysis, a court must accept all well-pleaded factual allegations in the complaint as true for purposes of determining whether the complaint states a plausible claim for relief, and must view the factual allegations in the light most favorable to the plaintiff.  Philips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  In this regard, a court may "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  Lum v. Bank of America, 361 F.3d 217, 221 n. 3 (3d

Cir. 2004).

### B.      Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading

an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R.

Civ. P. 12(f).  As a general rule, motions to strike are disfavored, and should be denied unless the

challenged allegations have no possible relation or logical connection to the subject matter of the

controversy and may cause some significant form of prejudice to one of the parties in the action.

See Symbol Techs., Inc. v. Aruba Networks, Inc., 609 F.Supp.2d 353, 359 (D. Del. 2009).

### C.      Motion for Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is

warranted "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is

material if it might affect the outcome of the suit under the applicable law, and it is genuine only

if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a

verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49

(1986).  At summary judgment, the inquiry is whether the evidence presents a sufficient

disagreement to require submission to the jury or whether it is so one-sided that one party must

prevail as a matter of law.  Id. at 251-52.  In making this determination, the Court must "consider

all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City

Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an

absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d

6

135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of

evidence to support the non-moving party's claims, "the non-moving party must rebut the

motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal

memoranda, or oral argument."  Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir.

2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the non-moving party "fails

to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden at trial," summary judgment is warranted.

Celotex, 477 U.S. at 322.  With respect to sufficiency of the evidence that the non-moving party

must provide, a court should grant a motion for summary judgment when the non-movant's

evidence is merely colorable, conclusory, or speculative.  Anderson, 477 U.S. at 249-50.  There

must be more than a scintilla of evidence supporting the non-moving party and more than some

metaphysical doubt as to the material facts.  Id. at 252; see also Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Further, a party may not defeat a motion for

summary judgment with evidence that would not be admissible at trial.  Pamintuan v. Nanticoke

Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

## III.   DISCUSSION

Defendant FTS seeks to dismiss or strike or obtain partial summary judgment on the

collective action claims in Plaintiff's First Amended Complaint, based on the enforceability of

Plaintiff's agreement to waive his right to litigate collectively.  (Doc. No. 13 at 5.)  FTS argues

that the right to litigate collectively under the FLSA and Pennsylvania wage laws is a procedural

right subject to waiver.   (Id.)  In addition, FTS argues that contractual collective action waivers

are enforceable as a general matter (Doc. No. 13 at 7-8), and further, that the waiver at issue here

is valid and enforceable  (Id. at 9-11).  In response, Plaintiff argues that the collective action

waiver signed by him violates his substantive statutory right to engage in concerted activity

under Section 7 of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151 et seq., (Doc.

No. 18 at 2), and that any contract that deprives an employee of such a substantive right is

unlawful and unenforceable (Doc. No. 18 at 6).

### A.      Standard Applicable to Defendant's Motion

As an initial matter, the Court must determine the proper standard upon which to evaluate

Defendant FTS's motion.  In its pending Motion to Dismiss or Strike Collective Action

Allegations, or Alternatively, for Partial Summary Judgment, Defendant FTS argues that

Plaintiff's collective action claims should be dismissed from this case because Plaintiff waived

his right to litigate collectively against Defendant FTS.  (Doc. No. 13 at 2-4.)  In support of its

argument, Defendant FTS attaches as an exhibit to its brief in support of its motion the

declaration of Karen Thornton, the Vice President of Human Resources for FTS.  (Doc. No. 13-

1.)  Thornton's declaration attests to the fact that, beginning in July 2015, each of FTS's current

employees agreed to litigate any disputes that arose in an individual, non-collective, non-class

action proceeding.  (Id. at 1 ¶ 4.)  The declaration attaches a copy of the Acknowledgment of

Receipt of Employee Handbook and Class and Collective Action Waiver signed by Plaintiff.

(Id. at 2.)  That acknowledgment contains the following language:

> I agree that any proceeding to resolve or litigate any dispute, whether in court
> or otherwise, will be conducted solely on an individual basis, and that I will
> not seek to have any controversy, claim or dispute heard as a class action,
> a representative action, a collective action, a private attorney-general action,
> or in any proceeding in which I act or propose to act in a representative
> capacity.  I further agree that no proceeding will be joined, consolidated,
> or combined with another proceeding, without the prior written consent of
> all parties to any such proceeding.

(Id.)  Plaintiff does not dispute that he signed the acknowledgment and class and collective action waiver.  (Doc. No. 18 at 3.)

Because the disposition of Defendant FTS's hybrid motion turns on consideration of materials beyond the scope of Plaintiff's First Amended Complaint, conversion of Defendants' motion to dismiss into a motion for partial summary judgment is appropriate.  See Fed. R. Civ. P. 12(d) ("If on a motion . . . under Rule 12(b)(6) or 12©, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").  Before the Court can exercise its discretion to convert a motion to dismiss into a motion for summary judgment, it must provide adequate notice to the Plaintiff of its intent to convert the motion, and afford Plaintiff a reasonable opportunity to present any material relevant to his claims.  Rose v. Bartle, 871 F.2d 331, 340 (3d Cir. 1989).

Consistent with that requirement, "motions for summary judgment that are presented to the court as motions in the alternative constitute sufficient notice to a non-moving party that the court may convert a motion to dismiss into a motion for summary judgment," and therefore, additional notice is not required.  Carver v. Plyer, 115 F. App'x 532, 536 (3d Cir. 2004) (not precedential) (citing Hilfirty v. Shipman, 91 F.3d 573, 578-79 (3d Cir. 1996)).  As Defendant FTS's motion was presented as one in the alternative for partial summary judgment, and Plaintiff responded to all parts of FTS's moving papers, the Court finds that Plaintiff has had sufficient notice of the Court's potential conversion of the motion into one for summary judgment, and therefore, the Court considers the motion under the Rule 56 standard.  While motions for summary judgment are usually entertained at a later stage of the case, the issue as presented by Defendant FTS's motion amounts to a question of law not requiring further factual development.

9

B.      <u>Collective Action Waiver</u>

 The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a).  An employer violating this provision is liable for unpaid overtime compensation, as well as liquidated damages.  <u>Id.</u> § 216(b).

The statute provides the opportunity for plaintiffs to litigate their claims collectively, as it states that an action to recover damages "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  <u>Id.</u>  However, an employee may not participate as a party plaintiff in an action brought pursuant to Section 216(b) without explicit consent to do so in writing.  <u>Id.</u>

Defendant FTS argues that Plaintiff executed a valid waiver of his right to litigate collectively under the FLSA and Pennsylvania wage laws, as the right to litigate collectively is a procedural right subject to waiver.  (Doc. No. 13 at 5.)  The majority of the authority on the subject of waivers of the right to litigate collectively has arisen in the context of litigation involving the enforcement of agreements to arbitrate, and at least in that context, the weight of the authority supports the proposition that the right to litigate collectively can be waived.  <u>See Am. Express Co., et al. v. Italian Colors Rest. et al.</u>, 133 S. Ct. 2304 (2013) (enforcing arbitration agreement's class action waiver in a federal antitrust suit against American Express brought by merchants who accepted the cards); <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 32 (1991) (enforcing class waiver in an arbitration agreement even where the federal

statute at issue, the Age Discrimination in Employment Act, expressly permitted collective actions, as "the fact that the [ADEA] provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred") (citation omitted).

    With regard to the FLSA right to collective action in particular, the majority of United States circuit courts of appeal addressing the issue in the context of arbitration agreements have held that the FLSA does not provide a non-waivable, substantive right to litigate collectively. See Walthour v. Chipio Windshield Repair, LLC, 745 F.3d 1326, 1334 (11th Cir. 2014); Sutherland v. Ernst & Young LLP, 726 F.3d 290, 297 & n.6 (2d Cir. 2013);  Owen v. Bristol Care, Inc., 702 F.3d 1050, 1052, 1054 (8th Cir. 2013);  Carter v. Countrywide Credit Indus., Inc., 362 F.3d 294, 298 (5th Cir. 2004); see also Vilches v. The Travelers Cos., Inc., 413 F. App'x 487, 492-95 & n.4 (3d Cir. 2011) (referring question of whether class arbitration was agreed upon by parties to the arbitrator, but finding class action waiver not unconscionable and noting that "there is no 'suggestion in the text, legislative history, or purpose of the FLSA that Congress intended to confer a nonwaivable right to a class action under that statute'") (citation omitted).

    In opposition to this authority, Plaintiff relies on two cases from the Ninth and Seventh Circuits, Morris v. Ernst & Young LLP, No. 13-165599, 2016 U.S. App. LEXIS 15638 (9th Cir. Aug. 22, 2016), and Lewis v. EPIC Systems, Corp., 823 F.3d 1147 (7th Cir. 2016),[3] which hold that a collective action waiver violates an employee's substantive, statutory right to engage in

---

    [3] On September 2, 2016, EPIC Systems filed a Petition for Certiorari with the United States Supreme Court, which was granted on January 13, 2017 (No. 16-285).

concerted activity under Section 7 of the NLRA.[4]  (Doc. No. 18 at 2.)

The plaintiffs in both Morris and Lewis asserted claims pursuant to the FLSA and in each case executed employment agreements containing a collective action waiver and an agreement to pursue legal claims through arbitration.  Morris, 2016 U.S. App. LEXIS 15638 at *4; Lewis, 823 F.3d at 1151.  In holding that the collective action waivers executed by the plaintiffs violated their rights under the NLRA, the Ninth and Seventh Circuits relied on the National Labor Relations Board's ("NLRB") interpretation of Section 7 of the NLRA in its 2012 decision in D.R. Horton, Inc., 357 N.L.R.B. 2277, 357 NLRB No. 184 (2012), enf'd denied, D.R. Horton, Inc. v. NLRB, 737 F.3d 344 (5th Cir. 2013), where the NLRB found that arbitration agreements containing collective action waivers violate an employee's substantive right to engage in "concerted activit[y]" under Section 7 of the NLRA.  357 NLRB No. 184 at *12.[5]

---

[4] Section 7 of the NLRA provides that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157.  Section 8 enforces Section 7 by deeming that it "shall be an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [Section 7]." Id. at § 158(a)(1).  The National Labor Relations Board is "empowered . . . to prevent any person from engaging in any unfair labor practice . . . affecting commerce." Id. § 160(a).

[5] The Fifth Circuit reviewed the decision of the NLRB in D.R. Horton, Inc. v. NLRB, 737 F.3d 344 (5th Cir. 2013), and found that while "cases under the NLRA give some support to the Board's analysis that collective and class claims, whether in lawsuits or in arbitration, are protected by Section 7," such an analysis makes "the NLRA the only relevant authority[,]" while the court found the Federal Arbitration Act ("FAA") to have "equal importance." Id. at 357.  The Fifth Circuit acknowledged "the force of the Board's efforts to distinguish the NLRA from all other statutes that have been found to give way to requirements of arbitration," 737 F.3d at 362, but found them ultimately unpersuasive, and joined the Second Circuit in Sutherland and the Eighth Circuit in Owen in finding arbitration agreements containing collective action waivers enforceable. Id.; see Sutherland, 726 F.3d at 297-98 & n.8; Owen, 702 F.3d at 1055.

Subsequent to the Fifth Circuit's decision in D.R. Horton, the Eleventh Circuit issued its

For example, in <u>Lewis</u>, the Seventh Circuit affirmed the district court's denial of an employer's motion to compel arbitration because it concluded that the class-action waiver in its arbitration agreement violated Sections 7 and 8 of the NLRA and accordingly, was unenforceable under the FAA's savings clause.[6]  In that case, despite the existence of an arbitration agreement governing employment-related disputes, plaintiff Lewis sued his employer in federal court, seeking to pursue a collective action claim under the FLSA and Wisconsin state law and alleging that his employer unlawfully deprived him and similarly situated employees of overtime pay.  <u>Lewis</u>, 823 F.3d at 1151.

In its opinion, the Seventh Circuit, while acknowledging that the NLRA does not define "concerted activities," and stating that "'concerted activity' might, at the most, be read as ambiguous as applied to collective lawsuits," nevertheless found Section 7 unambiguous, and deferred to the NLRB's interpretation of Sections 7 and 8 "to prohibit employers from making agreements with individual employees barring access to class or collective remedies."  <u>Id.</u> at 1153 (citing <u>D.R. Horton</u>, 357 N.L.R.B. No. 184, at *5).  Accordingly, the court found that the arbitration provision at issue violated Sections 7 and 8 of the NLRA "insofar as it prohibits collective action."  <u>Id.</u> at 1156.

---

decision in <u>Walthour</u>, 745 F.3d 1326, in which it concluded, after examining the FLSA's text, legislative history, purposes, and relevant Supreme Court decisions, that Section 16(b) of the FLSA does not provide for a non-waivable, substantive right to bring a collective action, and cited the Fifth Circuit's decision in <u>D.R. Horton</u> with approval.  <u>Id.</u> at 1336.  In <u>Murphy Oil USA, Inc. v. NLRB</u>, 808 F.3d 1013 (5th Cir. 2015), the Fifth Circuit again reversed a decision of the NLRB finding that a class action waiver violated the NLRA.  <u>Id.</u> at 1018 & n.3.

[6] The FAA provides that any written contract "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

In reaching its decision in <u>Lewis</u>, the Seventh Circuit relied on the line of cases cited by Plaintiff in his opposition brief to the effect that (1) "concerted activit[y] includes 'resort to administrative and judicial forums,'" <u>Eastex, Inc. v. NLRB</u>, 437 U.S. 556, 566 & n.15 (2010) (collecting cases); and (2) filing a collective or class action lawsuit constitutes "concerted activit[y]" under Section 7 of the NLRA.  <u>See</u> <u>Brady v. Nat'l Football League</u>, 644 F.3d 661, 673 (8th Cir. 2011);  <u>Altex Ready Mixed Concrete Corp. v. NLRB</u>, 542 F.2d 295, 297 (5th Cir. 1976);  <u>D.R. Horton</u>, 357 N.L.R.B. No. 184, at *2 & n.4 (collecting cases).

While the majority of the decisions in the area of collective action waivers under the FLSA have been in the arbitration context and have therefore implicated the Federal Arbitration Act's strong presumption in favor of arbitration, numerous district courts have also upheld collective action waivers under the FLSA in the non-arbitration context.  For example, in <u>Mazurkiewicz v. Clayton Homes, Inc.</u>, 971 F. Supp. 2d 682, 692 (S.D. Tex. 2015), the court found that it "makes little sense that an arbitration agreement could take the more drastic step of entirely waiving a federal court forum, including the right to proceed collectively, but an employment contract could not waive the right to proceed collectively in court while preserving the right to bring suit on an individual claim." <u>Id.</u> at 692.  In <u>Mazurkiewicz</u>, the FLSA collective action waiver at issue was contained in an agreement governing the plaintiff's employment.  <u>Id.</u> at 686; <u>see</u> <u>Palmer v. Convergys Corp.</u>, No. 7:10-CV-145, 2012 WL 425256, at *3-6 (M.D. Ga. Feb. 9, 2012) (FLSA collective action waiver contained in employment application constituted a valid, binding agreement).

FLSA collective action waivers have also been found enforceable when contained in a release and waiver of claims signed in exchange for a severance package.  <u>See</u> <u>Birdsong v. AT &</u>

T Corp., et al., No. 12-6175, 2013 WL 1120783, at *6 (N.D. Cal. Mar. 18, 2013); Lu v. AT & T

Services, Inc., et al., No. C10-05954, 2011 WL 2470268 at *3 (N.D. Cal. June 21, 2011);

Copello v. Boehringer Ingelheim Pharm. Inc., 812 F.Supp.2d 886, 893-94 (N.D. Ill. 2011); Kelly

v. City & Cnty. of SF, et al., No. C-05-1287, 2008 WL 2662017 at *4 (N.D. Cal. Dec. 19, 2011).

Most recently, the United States District Court for the Western District of Pennsylvania

upheld a collective action waiver executed in connection with a severance agreement in

Kubischta v. Schlumberger Tech. Corp., No. 15-1338, 2016 WL 3752917 at *7-8 (W.D. Pa. July

14, 2016), finding the collective action waiver not substantively unconscionable under

Pennsylvania law.[7]  In Kubischta, court the found unpersuasive plaintiff's reliance on Killion v.

KeHE Dist., LLC, 761 F.3d 574 (6th Cir. 2014), cert denied, 135 S. Ct. 1745 (2015), where the

Sixth Circuit Court of Appeals found a FLSA collective action waiver contained in a separation

agreement unenforceable outside of the arbitration context, because in the absence of the

applicability of the Federal Arbitration Act, the court found that there existed no countervailing

federal policy outweighing FLSA's policy allowing collective actions.  Id. at 592.  Instead, the

Kubischta court was persuaded by a recent decision of the United States District Court for the

Eastern District of Pennsylvania in Korea Week, Inc., et al. v. Got Capital, LLC, et al., No. 15-

6351, 2016 WL 3049490, at *10 (E.D. Pa. May 27, 2016), where the court found class action

waivers outside of the arbitration context to be enforceable.[8]

---

[7] In Kubischta, the plaintiff asserted only an individual claim under the FLSA, but sought to bring a class action to vindicate his rights under Pennsylvania and Ohio wage laws.

[8] In Korea Week, the plaintiffs entered into merchant cash advance financing arrangements with defendants which allegedly violated the Racketeer Influenced Corrupt Organizations Act ("RICO"), and the arrangements included a class action waiver.  Id. at *1. The court in Korea Week relied on the Supreme Court's decision in Italian Colors, 133 S. Ct.

In addition, FTS has directed the Court to two recent unpublished opinions from district courts in Texas finding FLSA collective action waivers enforceable when signed in connection with an acknowledgment of receipt of an employee handbook, similar to the instant case.  In Serrano v. Globe Energy Service, LLC, No. 15-cv-00170 (W.D. Tex. Mar. 3, 2016) (unpublished), the United States District Court for the Western District of Texas granted in part the defendant's motion for summary judgment, finding that an FLSA collective action waiver was valid and enforceable when signed by the plaintiff in connection with an Employee Handbook and an "Acknowledgment of Mutual Waiver of Jury Trial and Mutual Waiver of Class/Collective Action." Id. at *5.  Similarly, in Garcia v. FTS International, Inc., No. 4:15-cv-963 (N.D. Tex. Sept. 1, 2016) (unpublished), the United States District Court for the Northern District of Texas found an FLSA collective action waiver enforceable when signed by the plaintiffs in connection with their receipt of an Employee Handbook and signature on an "Acknowledgment of Receipt of Employee Handbook." Id. at *3,9.

In those cases, both courts were persuaded that collective action waivers are not only enforceable because of the strong policy in favor of the FAA (which is obviously not applicable outside of the arbitration context), but also because the text of the FLSA does not set forth a non-waivable substantive right to a collective action.  Serrano, No. 15-cv-00170, at 7-8 & n. 1 (citing

---

2304, in support of its conclusion that class action waivers outside of the arbitration context are enforceable.  The court noted that in Italian Colors, the Supreme Court held that the FAA does not permit courts to invalidate arbitration agreements on the basis that they do not allow class arbitration of a federal law claim, as Federal Rule of Civil Procedure 23 does not "establish an entitlement to class proceedings for the vindication of statutory rights."  Korea Week, 2016 WL 3049490, at *9 (quoting Italian Colors, 133 S. Ct. at 2309).  Stated differently, "the individual suit that was considered adequate to assure 'effective vindication' of a federal right before adoption of class action proceedings did not suddenly become 'ineffective validation' upon their adoption."  Id. (quoting Italian Colors, 133 S. Ct. at 2309).

<u>Walthour</u>, 745 F.3d at 1334); <u>Garcia</u>, No. 4:15-cv-963 at *7-8.  <u>See</u> <u>Feamster, et al. v.</u>

<u>Compucom Sys., Inc.</u>, No. 7:15-cv-00564, 2016 WL 722190, at *3-4 (W.D. Va. Feb. 19, 2016)

(finding persuasive the authorities holding that a right to collective action under the FLSA is

waivable, citing approvingly to the court's conclusion in <u>Walthour</u> by stating that "previous

Supreme Court decisions, read together, show that 'the text of . . . FLSA §16(b) does not set

forth a non-waivable substantive right to a collective action'") (citation omitted).

 After careful review of the above authorities, and in the absence of explicit guidance

from the Third Circuit Court of Appeals on this issue, the Court declines to find that the right to

litigate collectively under the FLSA is a substantive right guaranteed by the NLRA and not

subject to waiver, as Plaintiff urges.  The weight of the relevant authority discussed above

supports a finding that any such right to proceed collectively under the FLSA is a procedural one

subject to waiver, as long as individual employees retain the individual capacity to vindicate

their rights.  <u>See</u> <u>Barrentine v. Arkansas-Best Freight Sys., Inc.</u>, 450 U.S. 728, 741 (1981)

(emphasizing "the nonwaivable nature of an individual employee's right to a minimum wage and

to overtime pay under the [FLSA]").

 While the Court recognizes that the majority of the cases discussing the relevant issues

arise in the context of arbitration agreements governed by the FAA, and are therefore

distinguishable from the instant case, the Court is persuaded by those cases which have found

that the ability to litigate collectively under the FLSA is a procedural right subject to waiver

outside of the arbitration context.  <u>See</u>  <u>Feamster</u>, 2016 WL 722190, at *3-4; <u>Mazurkiewicz</u>, 971

F.Supp. 2d at 692; <u>Palmer</u>, 2012 WL 425256, at *3-6, 7; <u>Birdsong</u>, 2013 WL 1120783, at *6; <u>Lu</u>,

2011 WL 2470268, at *3; <u>Copello</u>, 812 F. Supp.2d at 893-94; <u>Kelly</u>, 2008 WL 2662017, at *4;

Serrano, No. 15-cv-00170, at *8;  Garcia, No. 4:15-cv-963, at *9.  The Court is persuaded that

collective action waivers are enforceable not only because of a strong policy in favor the FAA

(which applies only in the context of an arbitration agreement), but also because the text of the

FLSA "does not set forth a non-waivable right to a collective action."  Walthour, 745 F.3d at

1335.[9]  Accordingly, the Court concludes, as a matter of law, that employees can waive their

ability to participate in collective action litigation, as long as individual employees maintain the

individual capacity to vindicate their rights.

Having found as a matter of law that the right to litigate collectively is subject to waiver

here, and as Plaintiff does not challenge the validity or enforceability of the waiver signed by

him on any other basis (for example, he does not argue that the agreement is unconscionable or

that the waiver of collective action financially prevents him from pursuing a vindication of his

rights), the Court finds the collective action waiver at issue to be valid and enforceable.

---

[9] Further, it is clear that Federal Rule of Civil Procedure 23, the vehicle through which
Plaintiff seeks to collectively litigate his Pennsylvania wage law claims, functions as a
procedural device rather than a substantive right, as it governs only "the manner and the means
by which the litigants' rights are enforceable."  Shady Grove Orthopedic Ass'n, P.A. v. Allstate
Ins. Co., 559 U.S. 393, 401 (2010); see Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 332
(1980) ("[T]he right of a litigant to employ Rule 23 is a procedural right only, ancillary to the
litigation of substantive claims.").  Therefore, it is clear that the right to pursue collective
litigation of state law claims through Federal Rule of Civil Procedure 23 is subject to waiver.

**IV.     CONCLUSION**

For all of the reasons discussed above, the Court will grant Defendant FTS's motion for partial summary judgment, and dismiss the class/collective allegations from Plaintiff's First Amended Complaint.  An order consistent with this memorandum follows.

 s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

19